UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DARRIN LaPINE,

                Plaintiff,                Case No. 1:10-cv-1272

v.                                                 Honorable Robert J. Jonker

PATRICIA CARUSO et al.,

                Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Counts I, II and V of the complaint for failure to state a claim, which will results in the dismissal of Defendants Caruso, Stoddard, McKee, Holmes and Correctional Medical Services, Inc. The Court also will dismiss the Michigan Department of Corrections because it is immune. The Court will serve Counts III, IV and VI of the complaint against Defendants Rosen, Hosey, Schooley, Misner and Moulter.

**Factual Allegations**

Plaintiff currently is incarcerated in the Chippewa County Jail, but the events giving rise to his complaint occurred while he was incarcerated in the Ionia Correctional Facility (ICF) and the Bellamy Creek Correctional Facility (IBC). In his *pro se* complaint, he sues the Michigan Department of Corrections (MDOC), MDOC Director Patricia Caruso; Assistant Resident Unit Supervisor Bradley Rosen; Resident Unit Manager Eldor Hosey; Assistant Deputy Warden Scott Schooley; Deputy Warden Kathy Stoddard; Warden Kenneth McKee; Corrections Officers Vern Misner and (unknown) Moulter; Dr. Scott Holmes; and Correctional Medical Services, Inc. (CMS).

Plaintiff claims that while he was incarcerated at ICF, he was elected to be a Warden's Forum representative. According to Plaintiff, ICF staff hated him for advocating for other prisoners and filing grievances on many issues. On August 24, 2009, Defendant Moulter allegedly wrote a false misconduct against Plaintiff for fighting and assault that allegedly occurred during a hockey game the previous night. Plaintiff claims that Moulter brought the misconduct charges in retaliation for Plaintiff's grievances and complaints. Moulter allegedly told Plaintiff, "[Y]ou shouldn't have filed all those grievances and pushed that warden forum shit like you did, you wouldn't be going to the hole in 2 block right now. You see how things work around I-Max. Hope you can explain to your family how you lost your parole playing hockey. Now your [sic] in the penalty box. Ha ha ha." (Compl., Page ID#8.) Plaintiff was found guilty of the misconduct charges, but he appears to claim that the conviction subsequently was overturned by the state circuit court.

Plaintiff was transferred to IBC on September 19, 2008. Plaintiff claims that IBC was a security level IV facility, which was three levels higher than his true security level. Immediately after his arrival, Plaintiff began to have severe allergic reactions due to excessive dust in and around

his cell. Plaintiff claims that the dust in his cell made him unable to breath and caused him to choke and cough up phlegm. Plaintiff contends that he was unable to access the ventilation system and other crevices where dust, cobwebs and other filth had collected. On February 11, 2009, Defendant Hosey told Plaintiff that he would order a cleaning if Plaintiff got a special medical accommodation, but Plaintiff's request for a special medical accommodation was denied. Plaintiff alleges that despite numerous requests and grievances, cleaning was refused by custody staff and medical refused to clean or to compel custody staff to clean Plaintiff's cell. While maintenance staff ultimately cleaned the ventilation system on March 10, 2009, Plaintiff claims that it did not provide him with any relief. Plaintiff sent letters to numerous individuals about the problem, including Defendants McKee, Stoddard, Schooley, Hosey and Rosen, but they failed to take corrective action.

Plaintiff alleges that he received several threats from IBC staff members regarding his filing of grievances. He specifically claims that Defendants Hosey and Schooley told him on February 4, 2009, that he would be sorry if he did not stop filing grievances. Plaintiff immediately wrote a grievance against Hosey and Schooley. The following day, Defendant Hosey called Plaintiff out to review the grievance. When Plaintiff refused to discuss the grievance with him, Hosey stated, "W[e] are sick of your litigation shit, up front told me to write you up." (Compl., Page ID#12.) Plaintiff contends that Hosey wrote a false misconduct report against him for insolence in retaliation for filing the grievance. Defendant Misner escorted Plaintiff to the misconduct hearing on February 12, 2009. Plaintiff alleges that when he told Misner that the misconduct charge was false and retaliatory, Misner became angry and handcuffed Plaintiff's hands so hard behind his back that it caused Plaintiff severe pain. Even after Plaintiff was found not guilty of the insolence charge, Misner refused to loosen the handcuffs. Plaintiff claims that he suffered cuts, bleeding, swelling,

bruising, abrasions and welts on his hands and wrists and has permanently lost the full use of his thumb as a result of Misner's excessive use of force.

In Count I of his complaint, Plaintiff claims that Defendants Rosen, Hosey, Schooley, Stoddard and McKee violated his Eighth Amendment rights when they failed to clean the dust and dirt from his cell that caused him to have severe allergeric reactions. In Count II, he contends that Defendant CMS and Holmes failed to provide him adequate medical treatment for his allergies by failing to issue a special accommodation to have his cell cleaned. Count III contends that Defendants Hosey, Rosen and Schooley conspired to retaliate against Plaintiff for filing grievances and complaints by falsifying a misconduct charge for insolence. In Count IV, Plaintiff asserts that Defendant Misner used excessive force in applying the handcuffs behind his back in violation of his Eighth Amendment rights. Plaintiff further claims that Misner's conduct was retaliation for Plaintiff's assertion that the misconduct charge was false and retaliatory. In Count V, Plaintiff claims that Defendant Caruso enacted an unconstitutional policy directive requiring a prisoner to be handcuffed behind his back at a major misconduct charge for a non-violent offense. Plaintiff contends that but for the policy, his wrists would not have been injured by Defendant Misner. Finally, in Count VI, Plaintiff claims that Defendant Moulter wrote a false misconduct against him in retaliation for his grievances and complaints.

## Discussion

I.   Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly

abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court will dismiss the MDOC.

  II. <u>Failure to State a Claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010 (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Counts I and II

In Count I, Plaintiff alleges that Defendants Rosen, Hosey, Schooley, Stoddard and McKee violated his Eighth Amendment rights when they failed to clean the dust and dirt from his cell that caused him to have severe allergic reactions. He further claims in Count II that Defendants CMS and Holmes failed to provide him adequate medical treatment for his allergies by failing to issue a special accommodation to have his cell cleaned.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To fulfill the objective component, the prisoner must show that she is suffering from a "sufficiently serious" medical need, such that "[s]he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The objective component is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

With regard to the objective component, it is unclear whether Plaintiff's dust allergy is a sufficiently serious condition to implicate Eighth Amendment protections. Federal courts have held that mild to moderate symptoms from allergic reactions to common allergens like dust, mold and mildew do not rise to constitutional dimension. *See Peters v. Berghuis,* No. 1:09-cv-14, 2009 WL 261387 (W.D. Mich. Feb. 3, 2009) (inmate's complaint that he found it hard to sleep because the lack of proper ventilation, dry air and amount of dust in the unit caused him to suffer sinus headaches and congestion pressure was not "the sort of serious medical condition that would implicate the Eighth Amendment."); *Davidson v. Scully*, No. 81 Civ. 0390 (PKL), 86012, 2001 WL 963965, at *5 (S.D. N.Y. Aug. 22, 2001) (inmates common seasonal allergies to dust, grass, tress and other antigens which caused headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, nasal infections, and breathing problems "[were] not, in objective terms, a serious medical need under the Eighth Amendment."); *see also Mayes v. Travis State Jail*, C.A. No. 06-CA-709, 2007 WL 1888828 (W.D. Tex. 2007) (finding as *de minimis* inmate's claims for recurrent sinus infections allegedly due to mold and mildew exposure); *Smith v. Fox*, C.A. No. 4:05-CV-1554, 2006 WL 2090170, at *6 (D. S.C. 2006) (finding as *de minimis* inmates's claims of migraines and sores in his nose and mouth due to mold and mildew in his cell); *Gill v. Shoemate*, C.A. No. 05-CV-2124, 2006 WL 1285412 at *5 (W.D. La. 2006) (finding as *de minimis* complaints

of headaches and eye and throat irritation following exposure to mold, mildew, dust, and fumes). The state need not treat prisoners at a level that "exceeds what the average reasonable person would expect or avail [him]self of in life outside the prison walls. [A correctional facility] is not a health spa, but a prison in which convicted felons are incarcerated." *Dean v. Coughlin*, 804 F.2d 207, 213 (2d Cir. 1986).

Even if Plaintiff could satisfy the objective requirement, he cannot show that Defendants possessed the subjective intent necessary to establish an Eighth Amendment violation. Plaintiff received allergy testing and does not allege in his complaint that he was denied necessary medication to treat his allergy symptoms. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Moreover, Plaintiff does not allege that he was physically incapable of cleaning his cell or that he was denied access to cleaning supplies for that purpose. Further, by Plaintiff's own admission, the ventilation system was cleaned after his requests. Plaintiff, therefore, cannot establish that Defendants disregarded an excessive risk to Plaintiff's health.

Plaintiff also fails to state a claim against Defendants Stoddard, McKee and CMS on an alternate ground. Plaintiff does not make any specific factual allegations against Stoddard and McKee in his complaint other than they failed to take corrective action in response to his letters of complaint. In addition, Plaintiff sues CMS by virtue of its position as the health care provider for all prisoners under the jurisdiction of the MDOC at the time the action arose and its supervisory authority over Dr. Holmes. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Stoddard and McKee engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them. Similarly, while CMS is a state actor and therefore a proper party to this §1983 action, *see Street*, 102 F.3d at 814, CMS cannot be held vicariously liable for the actions of its agent, Dr. Holmes, on a respondeat superior basis. *See id.* at

818 (noting that "every circuit to consider the issue has extended the holding [of *Monell*] to private corporations as well").

For the reasons stated above, Counts I and II of the complaint will be dismissed for failure to state a claim. Because Defendants Stoddard, McKee, CMS and Holmes are named only in Counts I and II of the complaint, they will be dismissed from this action.

### B. **Count V**

In Count V, Plaintiff claims that Defendant Caruso enacted an unconstitutional policy directive requiring a prisoner to be handcuffed behind his back at a major misconduct charge for a non-violent offense. Plaintiff contends that but for the policy, his wrists would not have been injured by Defendant Misner. With regard to the use of handcuffs at misconduct hearings, Policy Directive (PD) 03.03.105 provides that restraints may be applied as deemed appropriate by the institution based on PD 04.05.112 "Managing Disruptive Prisoners." Policy 03.03.105 further states that prisoners in segregation, classified to security Level IV or V, or on toplock pending hearing shall be properly cuffed when brought to a major misconduct hearing. The policy does not sanction the excessive use of force by an escorting officer. As previously discussed, Defendant Caruso may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. Plaintiff does not allege that Defendant Caruso actively engaged in unconstitutional behavior. Accordingly, the Court will dismiss Count V.

### III. Service

At this stage of the proceedings, the Court finds that Plaintiff's allegations in Counts III and VI, that Defendants Hosey, Rosen, Schooley and Moulter retaliated against him for filing

grievances and complaints by falsifying misconduct charges against him, are sufficient to state a claim. In addition, Plaintiff's allegations in Count IV that Defendant Misner used excessive force in applying the handcuffs behind his back in retaliation for Plaintiff's assertion that the misconduct charge was false and retaliatory state one or more federal claims. Accordingly, the Court will order service of those claims against Defendants Rosen, Hosey, Schooley, Misner and Moulter.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Counts I, II and V of the complaint will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), for failure to state a claim. Because Defendants Caruso, Stoddard, McKee, Holmes and CMS are named only in Counts I, II and V, they will be dismissed from the action. The Court also will dismiss the MDOC because it is immune. The Court will order service of Counts III, IV and VI of the complaint against Defendants Rosen, Hosey, Schooley, Misner and Moulter.

An Order consistent with this Opinion will be entered.


Dated:   February 10, 2011            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE